**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-14-RJC
(3:11-cr-179-RJC-DCK-1)**

| | |
|---|---|
| FRAZIER DERRING, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. )<br>_____ ) | **ORDER** |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255, (Doc. No. 1), on Petitioner's Motion Seeking the Relief Sought in 2255 Motion Due to Response Failing to Deny or Admit Claims, (Doc. No. 14), on Petitioner's "Motion for Default Judgment, or in the Alternative Summary Judgment" (Doc. No. 15), and on Petitioner's Motion to Expedite, (Doc. No. 16).

**I.    BACKGROUND**

On October 9, 2010, officers with the North Carolina State Highway Patrol recovered a firearm from a vehicle driven by Petitioner after Petitioner was stopped for speeding in Charlotte, North Carolina. (Crim. Case No. 3:11cr179, Doc. No. 61 at 23-28: Trial Tr.). Through a records check, the officer who completed the stop learned that the vehicle driven by Petitioner was a rental vehicle that had been reported stolen and that Petitioner did not have a valid driver's license. (Id. at 25-26). Law enforcement officers arrested Petitioner for possession of a stolen vehicle and conducted a routine inventory search of the car. (Id. at 27). During the search, officers recovered a nine-millimeter, Hi-Point Luger handgun from a shoebox

1

in the trunk.  (Id. at 28; 38; 69).  Although Petitioner initially denied that the weapon was his, when officers began to run a records check on the firearm, Petitioner admitted that the firearm belonged to him.  (Id. at 31; 39).

On June 21, 2011, a grand jury in the Western District of North Carolina charged Petitioner with a single count of possession of a firearm by a person who had previously been convicted of an offense punishable by a term of imprisonment greater than one year, 18 U.S.C. § 922(g)(1).  (Id., Doc. No. 1: Indictment).  Before trial, Petitioner's court-appointed counsel Aaron E. Michel filed a motion to suppress the firearm that was recovered.  (Id., Doc. No. 11: Motion for Leave to File Motion to Suppress).  In support of the motion to suppress, counsel presented evidence that, as a result of the same traffic stop on October 9, 2010, the State of North Carolina had also charged Petitioner with possession of a firearm by a felon, but the state prosecutor subsequently dismissed the charge based on the state prosecutor's assertion that "[t]he gun was located and seized during an improper search." (Id., Doc. No. 11-2 at 2).  Petitioner's counsel attached the state court's notice of dismissal to the motion to suppress and specifically urged this Court to follow the state's lead and dismiss Petitioner's federal charges.  (Id., Doc. No. 11-1 at 4) ("The State of North Carolina dismissed the state stolen property charge because the car was not stolen and dismissed the firearm charge because the firearm was located and seized during an improper search.  This Court should do the same.").  Counsel also moved to dismiss the indictment, arguing that Section 922(g) violates the Second Amendment and exceeds the Government's power under the Commerce Clause.  (Id., Doc. No. 15: Motion to Dismiss).  This Court denied both of Petitioner's motions.  (Id., Doc. Nos. 14; 19: Orders).

Following a jury trial, Petitioner was convicted of the charge against him.  (Id., Doc. No. 22: Jury Verdict).  This Court sentenced Petitioner to 92 months of imprisonment, a term at the

2

low-end of the range advised by the United States Sentencing Guidelines. (Id., Doc. No. 50: Judgment). Petitioner appealed, arguing as his sole contention that the evidence presented at trial was insufficient to convict him because the Government did not prove that the item he possessed met the statutory definition of a firearm, primarily that it was capable of expelling projectile by the action of an explosive. United States v. Derring, 539 F. App'x 114 (4th Cir. 2013). The Fourth Circuit found that Petitioner's contention was without merit and that court affirmed Petitioner's conviction on September 3, 2013. James S. Weidner, Jr., represented Petitioner on appeal.

Petitioner placed the instant motion to vacate in the prison mail system on January 13, 2014, and it was stamp-filed in this Court on January 16, 2014. Petitioner asserts four grounds in support of his motion. First, he contends that the performance of his trial counsel was constitutionally deficient based on seventeen alleged acts and omissions before, during, and after his trial. Second, he contends that his appellate counsel was constitutionally deficient for failing to contend on appeal that Petitioner's trial counsel had been constitutionally deficient. Third, Petitioner contends that the Government engaged in prosecutorial misconduct because it did not introduce evidence that state charges against Petitioner for firearm possession had previously been brought and dismissed and because the Government reminded the jury during its closing argument that Petitioner had stated he possessed his firearm for protection. Fourth, Petitioner contends that this Court engaged in judicial misconduct by denying his motion to suppress.

**II.  STANDARD OF REVIEW**

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any

relief. After having considered the record in this matter, the Court finds that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

#### A. Ineffective Assistance of Counsel Claim

#### 1. Ineffective Assistance of Trial Counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced Petitioner. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000). As noted, Petitioner raises seventeen instances in which he contends that his trial counsel was ineffective before, during, and after Petitioner's trial. For the following reasons, Petitioner's motion and the record conclusively establish that none of the

4

seventeen grounds that he purports to identify in support of his ineffective assistance theory establish that his trial attorney was constitutionally deficient.

First, Petitioner's trial attorney was not constitutionally deficient for failing to move to dismiss Petitioner's indictment on the ground that the state firearm charges against him were dismissed.[1] (Doc. No. 1-1 at 6-7: Mem.). Petitioner's attorney filed the proper motion to challenge the search that led to the Section 922(g) charge—a motion to suppress the evidence obtained from the search. (Crim. Case No. 3:11cr179, Doc. No. 11). Indeed, Petitioner's trial counsel specifically argued in support of the motion to suppress that the State of North Carolina had dismissed the state firearm charge based on the state prosecutor's opinion that the firearm was seized during an improper search. (Id. at 4). This Court denied Petitioner's motion to suppress; thus, any further motion to dismiss the indictment based on the search would have been meritless. Accordingly, trial counsel's decision not to file a motion to dismiss the indictment on the ground that the state prosecutor had dismissed the state firearm charge was objectively reasonable. See Truesdale v. Moore, 142 F.3d 749, 756 (4th Cir. 1998) ("It is certainly reasonable for counsel not to raise unmeritorious claims.").

Second, Petitioner's trial attorney was not constitutionally deficient for failing to file a motion for "discovery/exculpatory evidence," which Petitioner contends would have revealed that the state firearm charge against him had been dismissed for reasons related to an improper search. (Doc. No. 1-1 at 7-8). This Court entered an order days after Petitioner was indicted, requiring the Government to disclose to Petitioner all discoverable material, including exculpatory evidence or information. (Crim. Case No. 3:11cr179: Doc. No. 4). Petitioner's

---

[1] As noted, supra, counsel did move to dismiss the indictment on other grounds.

attorney could not be reasonably expected to file a motion for relief to which Petitioner was already entitled. Moreover, contrary to what his motion suggests, Petitioner did receive documents from the North Carolina state court indicating that one of his state charges was dismissed because a "gun was located and seized during an improper search," and, as the Court has already discussed, Petitioner's attorney attached those documents to his motion to suppress. (Id., Doc. No. 11-2). Accordingly, even if Petitioner could show that his counsel rendered deficient performance, which he cannot, Petitioner cannot establish that he suffered prejudice.

Third, Petitioner's trial attorney was not constitutionally deficient for failing to file a motion to dismiss after a police officer testified that he did not provide Petitioner with warnings described by Miranda v. Arizona, 384 U.S. 436 (1966). (Doc. No. 1-1 at 8-9). To support this contention, Petitioner points to one line of testimony during his trial by North Carolina State Highway Patrol Trooper Michael Loukos, who stated that when he conducted a traffic stop of Petitioner, he did not give Petitioner "Miranda notices." (Crim. Case No. 3:11cr179, Doc. No. 61 at 31). Petitioner argues that his attorney should have filed a motion to dismiss based on Loukos' testimony. (Doc. No. 1-1 at 8). This argument is meritless, as nothing in the record suggests that the requirements of Miranda were violated. Loukos testified unequivocally that all of Petitioner's remarks made after Petitioner was arrested "were spontaneous." (Crim. Case No. 3:11cr179, Doc. No. 61 at 34). Unwarned, spontaneous statements by a person in custody are admissible consistent with Miranda. United States v. Montieth, 662 F.3d 660, 669 (4th Cir. 2011). Accordingly, assuming that a Miranda violation, if it had occurred, could support a motion to dismiss, Petitioner could not establish any basis for such a motion. The decision not to file a motion to dismiss based on a meritless Miranda challenge was neither objectively unreasonable nor prejudicial.

Fourth, Petitioner's contention that his trial attorney was constitutionally deficient for allegedly waiving Petitioner's right to a speedy trial is without merit. (Doc. No. 1-1 at 9). Petitioner's counsel sought one continuance to review discovery and complete additional research and investigation, and this Court ordered another continuance to hear and rule on the motion to suppress. (Crim. Case No. 3:11cr179, Doc. No. 7: Motion to Continue; Doc. Entry dated 10/03/2011). Petitioner's trial was ultimately completed fewer than six months after he was indicted. (Id., Doc. Nos. 1; 22). Petitioner's counsel was not objectively unreasonable for taking the time necessary to prepare and pursue motions on Petitioner's behalf instead of demanding an earlier trial. Moreover, Petitioner cannot establish prejudice because he has identified nothing to suggest that the outcome of his trial would have been different if it had occurred sooner.

Fifth, Petitioner's trial attorney was not constitutionally deficient for failing to advise Petitioner that he had a right to a bench trial. First, contrary to his contention, Petitioner did not have a right to a bench trial. See United States v. Delaney, 214 F. App'x 356, 359 (4th Cir. 2007) (stating that while a defendant has a constitutional right to a jury trial, a defendant does not have a constitutional right to a non-jury trial). Moreover, Petitioner has identified nothing to suggest that having a bench trial rather than a jury trial would have resulted in a different outcome.

Sixth, Petitioner's trial attorney was not constitutionally deficient for failing to advise Petitioner that he could have received an adjustment of his offense level under Section 3E1.1 of the United States Sentencing Guidelines if he had pleaded guilty "to certain elements" of the offense with which he was charged. (Doc. No. 1-1 at 9). Petitioner did not have the option to plead guilty only to "certain elements" of the charge against him. "[A] guilty plea is an

7

admission of <u>all</u> the elements of a formal criminal charge." <u>McCarthy v. United States</u>, 394 U.S. 459, 466 (1969) (emphasis added).  Moreover, even if Petitioner had somehow been able to plead guilty to some elements while contesting others, he certainly cannot establish that the choice to do so was reasonably likely to have earned him a reduction under Section 3E1.1.  <u>See</u> <u>United States v. Hargrove</u>, 478 F.3d 195, 202 (4th Cir. 2007) (explaining that a court may properly conclude that a defendant who contests relevant conduct by proceeding to trial has acted in a manner inconsistent with acceptance of responsibility).  Accordingly, Petitioner cannot establish that his attorney's failure to advise him to pursue a legally impermissible and futile course was either objectively unreasonable or prejudicial.

Seventh, Petitioner's trial attorney was not constitutionally deficient for failing to hire a private investigator.  (Doc. No. 1-1 at 10).  Petitioner alleges that if his attorney had hired such an investigator, the investigator would have learned that state firearm charges against Petitioner were dismissed for reasons related to an improper search.  (<u>Id.</u>).  As the Court has already discussed, however, Petitioner's attorney already knew this information and raised it in support of a motion to suppress.  Counsel's decision not to hire an investigator to obtain information that counsel already had was neither objectively unreasonable nor prejudicial.

Eighth, Petitioner's trial attorney was not constitutionally deficient for failing to subpoena or question additional witnesses.  (<u>Id.</u>).  As part of this contention, Petitioner contends that his attorney should have questioned or subpoenaed the owners of the rental vehicle where the firearm was found.  He also contends that his attorney should have questioned or subpoenaed the individual who rented the car and the individual "who legally owned the gun found in the car."  (<u>Id.</u>).  It is well settled that "[a]n attorney need not pursue an investigation that would be fruitless."  <u>Harrington v. Richter</u>, 562 U.S. 86, 108 (2011).  Here, Petitioner was convicted of

8

possessing a firearm that was found in the vehicle that he was driving, and he admitted that the firearm was his. Petitioner has not identified anything that suggests that any of these witnesses would have had information or evidence that was reasonably likely to affect the outcome of his trial.

Ninth, Petitioner's trial attorney was not constitutionally deficient based on the fact that he advised Petitioner to stipulate that he had previously been convicted of an offense punishable by a term of imprisonment greater than one year. (Doc. No. 1-1 at 11-13). Counsel's advice was objectively reasonable because it likely eliminated the need for the jury to hear evidence about a prior conviction, which "generally carries a risk of unfair prejudice to the defendant." Old Chief v. United States, 519 U.S. 172, 186 (1997) (holding that a defendant's admission of a prior conviction in support of a charge under 18 U.S.C. § 922(g) precludes introduction of evidence about that prior conviction to establish it). Moreover, Petitioner cannot establish prejudice because he cannot show that the Government would not have established his prior conviction in the absence of a stipulation. Here, the presentence report shows, and it is undisputed, that Petitioner was convicted of at least one felony for which he was sentenced to more than one year of imprisonment. (Crim. Case No. 3:11cr179, Doc. No. 45 at 10-12: Final PSR).

Tenth, Petitioner's trial attorney was not constitutionally deficient for failing to "acquire his own transcription of the recorded phone calls which were used during [Petitioner's] jury trial." (Doc. No. 1-1 at 13). During trial, the Government played recordings of Petitioner's statements during jail calls, and the Government also introduced transcripts of those calls as "an illustrative aid." (Crim. Case No. 3:11cr179, Doc. No. 61 at 56-58). This Court instructed the jury, "The recording is the actual evidence. The transcript is just an aid to your listening to the actual evidence." (Id. at 57). Petitioner has identified nothing to suggest that the transcripts

9

prepared by government witnesses were inaccurate, and, in any event, the jury heard the original recordings. Accordingly, Petitioner cannot establish that counsel's failure to make a second transcript of the recordings was objectively unreasonable or that it resulted in prejudice.

Eleventh, Petitioner's trial attorney was not constitutionally deficient for failing to object to "the [government] agent sitting at the table with the opposing side during his trial." (Doc. No. 1-1 at 13). The Government is ordinarily able "to have an investigative agent at counsel table throughout the trial although the agent is or may be a witness," FED R. EVID. 615 advisory committee's note, and Petitioner has identified no circumstance that would have supported such an objection. In any event, Petitioner cannot establish prejudice because nothing in the record suggests that the presence of a case agent at counsel table affected the outcome of Petitioner's trial.

Twelfth, Petitioner's trial attorney was not constitutionally deficient for failing to object to this Court's statement to the jury pool during voir dire that the case would be "likely to last a day, day and a half." (Doc. No. 1-1 at 14 (quoting Crim. Case No. 3:11cr179, Doc. No. 60 at 8: Tr. of Voir Dire)). This Court's statement was part of a question whether any "jurors [had] any disability or impairment that would make serving on this jury difficult or impossible." (Crim. Case No. 3:11cr179, Doc. No. 60 at 8). Courts enjoy broad discretion over questions during voir dire, Ham v. South Carolina, 409 U.S. 524, 527 (1973), and this Court's question was well within its discretion. The Court's estimate of the length of the trial was accurate, and it did not impose any kind of limit on the amount of time that the jury could spend deliberating. Petitioner, therefore, cannot establish that his attorney was objectively unreasonable for declining to make a meritless objection to the Court's question, and he further cannot establish that he suffered prejudice.

Thirteenth, Petitioner's trial attorney was not constitutionally deficient for failing to "employ the assistance of a voice exemplar." (Doc. No. 1-1 at 14). Petitioner contends that if his attorney had "employed a voice exemplar then the courts would have learned that in fact the voice in the recording"—presumably the recording of jail calls played during Petitioner's trial during which Petitioner discussed owning the firearm—"didn't belong to him." (Id.). Petitioner identifies nothing about the voice on the recordings, his own voice, or anything else in the record that suggests that obtaining a voice exemplar would have been fruitful. Accordingly, he cannot establish that his attorney's conduct was objectively unreasonable. See Ruiz-Maldonado v. United States, No. CR05-281-JLR, 2008 WL 4960450, at *4 (W.D. Wash. Nov. 20, 2008) ("[C]ounsel could have reasonably decided that a voice exemplar . . . was unnecessary and an unwise use of limited resources, and . . . would not have made a difference in the outcome of the case."). Moreover, Petitioner cannot establish prejudice because his allegations about what the Court would have learned from a voice exemplar are both conclusory and speculative. Petitioner has not obtained a voice exemplar that shows that the voice on the recording is not his, nor has he identified any facts showing that he could have obtained an analysis of a voice exemplar that was both favorable to his defense and admissible. See Jefferson v. United States, No. CR. 97-276(4)MJDJGL, 2002 WL 31748608, at *6 (D. Minn. Dec. 2, 2002) ("[T]he law is clear that a voice spectrograph analysis would be subjected to the Daubert test before its admission.").

Additionally, William Hardee, a Special Agent of the Bureau of Alcohol, Tobacco, and Firearms, who had previously heard Petitioner speak, testified at trial that the voice on the recording was Petitioner's. (Crim. Case No. 3:11cr179, Doc. No. 61 at 55; 62). The jury also heard testimony about Petitioner's separate statements directly to law enforcement officers that he possessed the firearm that was recovered from the vehicle he drove. (Id. at 31; 39).

11

Accordingly, Petitioner cannot establish a reasonable probability that use of a voice exemplar in Petitioner's defense at trial would have affected the outcome of his trial.

Fourteenth, Petitioner's trial attorney was not constitutionally deficient for failing to "object to the fact that the officer was given an opportunity to view the firearm before entering the court room before testifying to the seizure of the firearm." (Doc. No. 1-1 at 14). Here, Officer Loukos testified at trial that he had examined the firearm before he entered the courtroom and determined that its serial number matched the serial number he had recorded in his report. (Crim. Case No. 3:11cr179, Doc. No. 61 at 34-35). Petitioner identifies no basis for his counsel to have objected to the fact that Officer Loukos had previously examined the firearm before he testified at trial, and Petitioner has not even purported to explain how such an objection could have been reasonably likely to affect the outcome of his trial. Accordingly, Petitioner cannot establish that his attorney's conduct was objectively unreasonable or prejudicial.

Fifteenth, Petitioner's trial attorney was not constitutionally deficient for failing to "object to Officer Hardee's testimony that he knew [Petitioner's] voice after only one time meeting him." (Doc. No. 1-1 at 14). The record directly contradicts Petitioner's allegation, as Petitioner's attorney objected when the testimony was introduced, and his objections were overruled. (Crim. Case No. 3:11cr179, Doc. No. 61 at 53-54). Additionally, at the close of evidence, counsel challenged the sufficiency of the evidence introduced by the Government, and further argued that this Court should not consider "the testimony of the officer about knowing the defendant's voice" because Petitioner had not been "Mirandized at the time." (Id. at 72). Moreover, testimony by a law enforcement officer familiar with a voice on a recording is sufficient to support a finding that the voice is authentic. See FED. R. EVID. 901(b)(5) (describing "[a]n opinion identifying a person's voice . . . based on hearing the voice at any time

12

under circumstances that connect it with the alleged speaker" as sufficient to support a finding that the item is what the proponent claims it is); United States v. Jackson, No. 97-4102, 1997 WL 764523, at *3 (4th Cir. Dec. 12, 1997) (holding that a law enforcement agent who spoke with a defendant when processing him during his arrest was competent to identify the defendant's voice on a tape). Accordingly, counsel's failure to object would have been neither objectively reasonable nor prejudicial.

Sixteenth, Petitioner's trial attorney was not constitutionally deficient for failing to either move for a mistrial or object to a statement by the Government during closing argument. (Doc. No. 1-1 at 15-16). Specifically, Petitioner contends that counsel's performance was deficient because "he failed to object to a highly prejudicial remark made by the prosecutor 'the prosecutor stated that Mr. Derring intended to use the gun.'" (Id. at 15). The language that Petitioner quotes in his brief does not appear to be among any statements by the Government in the trial transcript. The Government did argue that Petitioner "had the gun for a purpose. He was exercising dominion and control. He had that gun with him because he wanted it for protection." (Crim. Case No. 3:11cr179, Doc. No. 61 at 97). Nothing about this statement was improper. The evidence introduced at trial included a recorded jail call between Petitioner and another person during which the other person said, "You had a gun, right?" and Petitioner responded, "Yeah, how did you know?" (Doc. No. 13-1 at 2: Gov't Ex. 1). Further discussing his gun possession, Petitioner said, "It's protection." (Id. at 2-3). The statement by the Government about Petitioner's purpose was well within the bounds of reasonable inferences from the evidence introduced during trial. See United States v. Ford, 500 F. App'x 248, 252 (4th Cir. 2012). Petitioner, therefore, cannot establish that the Government's remarks during closing argument were improper, and he certainly cannot establish that any remarks "so prejudiced the

13

defendant's substantial rights that the defendant was denied a fair trial." Id. Accordingly, Petitioner cannot establish any basis for an objection to the Government's closing argument or any basis for a mistrial, and his attorney was not deficient for declining to pursue either of these avenues.

Finally, Petitioner's trial attorney was not constitutionally deficient for failing to review discovery to the extent necessary to determine that state firearm charges against Petitioner had been dismissed for reasons related to an improper search. (Doc. No. 1-1 at 16). As explained above, Petitioner's attorney was aware of this dismissal and made an argument in support of a motion to suppress based on the dismissal. (Crim. Case No. 3:11cr179, Doc. No. 11-2). Accordingly, the record directly contradicts Petitioner's allegation of deficient performance.

In sum, Petitioner's claim of ineffective assistance of trial counsel is without merit.

**2. Ineffective Assistance of Appellate Counsel**

Petitioner next alleges that his appellate attorney was constitutionally deficient for failing to raise ineffective assistance of trial counsel as a claim on Petitioner's direct appeal. Petitioner contends that his appellate attorney should have raised all but the sixth of the seventeen allegations about his trial counsel that Petitioner makes in his motion to vacate under Section 2255. (Doc. No. 1-1 at 17-21). Petitioner cannot establish either that his appellate attorney was deficient or that Petitioner suffered prejudice as a result of his attorney's performance. The Fourth Circuit has explained that courts should ordinarily only "find ineffective assistance for failure to pursue claims on appeal" when "ignored issues are clearly stronger than those presented." United States v. Mason, 774 F.3d 824, 829 (4th Cir. 2014) (quoting Smith v. Robbins, 528 U.S. 259, 288 (2000)). The Fourth Circuit will only consider a claim of ineffective assistance of counsel on a direct appeal from a criminal conviction "if it conclusively appears

from the record" that the appellant's counsel "did not provide effective assistance." See United States v. Martinez, 136 F.3d 972, 979 (4th Cir. 1998). The claim that Petitioner proposes that his appellate attorney should have raised on direct appeal—ineffective assistance of trial counsel—was not "clearly stronger" than the claim that appellate counsel actually raised—sufficiency of the evidence. That is, the Fourth Circuit would probably not have considered the challenges that Petitioner proposes because the record does not clearly establish any constitutionally deficient performance. Indeed, for the reasons stated above, the record conclusively establishes that each theory of ineffective assistance that Petitioner asserts is meritless. For the same reason, Petitioner cannot establish that he suffered prejudice, as no reasonable probability exists that the outcome of Petitioner's appeal would have been different if Petitioner's appellate attorney had raised any of the issues raised by Petitioner in this motion to vacate.

In sum, Petitioner's claim of ineffective assistance of appellate counsel is without merit.

**B. Prosecutorial Misconduct Claim**

Petitioner next alleges that the Government engaged in prosecutorial misconduct by declining to introduce at trial information about the dismissal of state charges against him and by describing during closing argument the purpose for which Petitioner had possessed a firearm. Petitioner's prosecutorial misconduct theory is both procedurally defaulted and meritless. First, because Petitioner has raised his prosecutorial misconduct theory for the first time in his motion under Section 2255, his theory is subject to a procedural bar unless Petitioner can demonstrate either cause and prejudice or actual innocence. See Jackson v. United States, 638 F. Supp. 2d 514, 601 (W.D.N.C. 2009). Petitioner's failure to even attempt to identify cause or prejudice or claim actual innocence is fatal to his theory. In a different part of his motion, Petitioner asserts that his attorney was constitutionally deficient, which, if proved, could establish cause for a

15

procedural default.  See Murray v. Carrier, 477 U.S. 478, 489 (1986).  The first of his prosecutorial misconduct theories, however—that the Government did not itself introduce evidence that the state prosecutor had dismissed charges against Petitioner—is not among the numerous claims Petitioner asserts his attorney was deficient for failing to raise.  Moreover, as explained above, Petitioner's attorney was not constitutionally deficient for declining to object to the Government's statement during closing argument about Petitioner's purpose for possessing the firearm.  Moreover, nothing in Petitioner's motion suggests any cause for Petitioner's failure to assert his prosecutorial misconduct theory on appeal.  Petitioner contends that his appellate attorney was constitutionally deficient only to the extent that attorney failed to raise claims that Petitioner's trial counsel was ineffective.  Nor could Petitioner establish prejudice even if he had alleged it.  As explained below, Petitioner's prosecutorial misconduct theory is meritless, and, even if the Government had introduced the fact that the state had dismissed state firearm charges and had not argued that he possessed his firearm for protection, no reasonable probability exists that the outcome of his trial would have been different.  In sum, Petitioner's prosecutorial misconduct claim is procedurally barred, and Petitioner has not shown cause and prejudice or actual innocence to excuse the default.

Even if the prosecutorial misconduct were not procedurally barred, it would still fail on the merits.  To establish prosecutorial misconduct, Petitioner must demonstrate (1) that the conduct of the Government was in fact improper and (2) that the improper conduct prejudicially affected his substantial rights so as to deprive Petitioner of a fair trial.  United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993).  Petitioner's prosecutorial misconduct theory fails on the merits because Petitioner's motion and the record conclusively show that no prosecutorial misconduct occurred.  First, the Government was not obligated to introduce at trial the fact that a state

16

prosecutor had previously charged Petitioner with unlawful firearm possession and then dismissed that charge for reasons relating to the propriety of the search that revealed the firearm. The prior state charge and dismissal of that charge were irrelevant to the determination of Petitioner's guilt or innocence in this Court. Furthermore, even if the charge and dismissal had been relevant to the issues before the jury and helpful to Petitioner's defense, the obligation of the Government was to disclose exculpatory information to the defense, not to ensure that it was introduced at trial. See United States v. King, 628 F.3d 693, 702 (4th Cir. 2011) ("[T]he Government need only disclose exculpatory evidence, not ensure that the defense further develop and utilize that evidence.") (emphasis in original). As explained previously, Petitioner was fully aware of documents describing dismissal of firearm charges by state authorities, and he filed those documents in support of his motion to suppress. Second, the Government's closing argument at Petitioner's trial was not improper. As explained previously, the Government's statement during closing argument regarding Petitioner's reason for having the gun was entirely permissible in the light of the evidence of Petitioner's own statement that he had the firearm for protection.

Finally, even if Petitioner could show that the Government engaged in prosecutorial misconduct, he could not show that the Government's conduct prejudicially affected his substantial rights so as to deprive Petitioner of a fair trial. Mitchell, 1 F.3d 235 at 240. Here, the propriety of the search that revealed Petitioner's firearm was not a question before the jury. Furthermore, the jury had already heard evidence that Petitioner possessed the firearm for protection before closing arguments began.

In sum, Petitioner's claim of prosecutorial misconduct is procedurally barred and without merit.

## C. Judicial Misconduct Claim

Petitioner next alleges that this Court engaged in "judicial misconduct" by "allowing the prosecutor to obtain an erroneous conviction." (Doc. No. 1-1 at 25). Petitioner contends that this Court "knew or should have known" that state charges had been dismissed because the "items seized were obtained through an illegal search" and that the Court should not have allowed the fruit of the search to be used against him. (Id. at 25). As explained previously, Petitioner raised the dismissal of state charges in support of his motion to suppress the firearm that was recovered from the vehicle that he was driving. Petitioner specifically urged this Court to dismiss Petitioner's federal charges in the light of the dismissal of his state charges, and this Court denied Petitioner's motion. (Crim. Case No. 3:11cr179, Doc. Nos. 11; 14 at 4). What Petitioner labels "judicial misconduct," therefore, is, in fact, an allegation that this Court erred by denying his motion to suppress.

Petitioner's judicial misconduct theory is subject to a procedural bar for two reasons. First, Petitioner did not challenge this Court's denial of his motion to dismiss on direct appeal, and accordingly he cannot raise this issue on collateral attack unless he can "show cause and actual prejudice resulting from the errors of which he complains." United States v. Pettiford, 612 F.3d 270, 279 (4th Cir. 2010). Petitioner cannot identify any cause for his failure to pursue his argument on appeal. "The existence of cause for a procedural default must turn on something external to the defense," id., and Petitioner had the opportunity to raise this issue on appeal. Nor can Petitioner establish prejudice. This Court rejected Petitioner's motion to suppress on the ground that "[i]t is well settled in the Fourth Circuit that an unauthorized rental car driver has no legitimate expectation of privacy in the vehicle," (Crim. Case No. 3:11cr179, Doc. No. 14 at 1 (citing United States v. Wellons, 32 F.3d 117, 119 (4th Cir. 1994)), and this Court's holding was

not erroneous. Petitioner's judicial misconduct theory is also procedurally barred because it "is substantively the same as the claim previously rejected" by this Court when it denied his motion to suppress. Mincey v. United States, No. 5:10cv123, 2010 WL 3607680, at *4 (W.D.N.C. Sept. 13, 2010). Petitioner has identified nothing that would restore, on collateral review, the viability of this failed claim. Id. Accordingly, Petitioner's judicial misconduct claim is procedurally barred.

The Court further finds that, even if Petitioner's judicial misconduct theory were not procedurally barred, it would fail for two additional reasons. First, Petitioner's theory is not cognizable under 28 U.S.C. § 2255 because it is a Fourth Amendment claim. See United States v. Johnson, 457 U.S. 537, 562 n.20 (1982) (explaining that "Fourth Amendment challenges on collateral attack" in federal cases are limited to those under 28 U.S.C. § 2255 where the government failed to provide the prisoner with "an opportunity for full and fair litigation of his claim"). Second, Petitioner's theory is meritless because this Court properly denied his motion to suppress for the reasons stated in this Court's Order denying that motion.

In sum, Petitioner's claim of judicial misconduct is procedurally barred and without merit.

IV. CONCLUSION

For the reasons stated herein, Petitioner's § 2225 petition is denied and dismissed.

**IT IS THEREFORE ORDERED THAT**:

1. Petitioner's § 2255 petition, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. Petitioner's Motion Seeking the Relief Sought in 2255 Motion Due to Response Failing to Deny or Admit Claims, (Doc. No. 14), and Petitioner's "Motion for Default Judgment, or in the Alternative Summary Judgment" (Doc. No. 15), are **DENIED**.

19

3. Petitioner's Motion to Expedite, (Doc. No. 16), is **GRANTED** to the extent that the Court has now ruled on the Section 2255 petition.

4. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Miller–El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

_[signature]_

Robert J. Conrad, Jr.
United States District Judge